IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN WILDING,** | : | **No. 3:23-cv-1879** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| v. | : | |
| | : | |
| **SCRANTON CCC CENTER, *et al.*,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

### I. Background

On November 14, 2023, Plaintiff, Shawn Wilding, an inmate housed in the Mahanoy State Correctional Institution, Frackville, Pennsylvania, filed the above captioned civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the Scranton Community Corrections Center, ("CCC Center"), the Scranton GEO Reentry Services ("Scranton GEO"), four employees of the CCC Center: CEO Jeffrey James; and Officers Joseph Fabratore, Alissa Owens, Thomas Brogan, and three Scranton GEO employees: Officers Kenny Fuentes, ShoqJusha Parker and Cassandria Pugh. Id. Plaintiff claims that Defendants exhibited deliberate indifference to his needs, harming him "both physically and mentally", when they lost Plaintiff's medication, "causing him to have two severe panic attacks and

having him walk to the ER." Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

Subsequent to the filing of the action, on November 24, 2023, Plaintiff filed a motion for leave to proceed *in forma pauperis*. (Doc. 5). The complaint is presently before the Court for preliminary screening pursuant to 28 U.S.C. §1915A(a). For the reasons set forth below, the motion to proceed *in forma pauperis* will be granted for the sole purpose of filing the action, and the complaint will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

## II. Standards of Review

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §1915(e)(2)(B) and §1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013).

In dismissing claims under §§1915(e)(2) and 1915A, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) (stating "[t]he legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1), §1915(e)(2)(B)(ii), or §1997e(c)(1) is the same as

that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to §1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed.R.Civ.P. 12(b)(6) standard for dismissal for failure to state a claim under §1915(e)(2)(B)).

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. Cty of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

- 3 -

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' Iqbal, 556 U.S. at 679, 129 S.Ct. 1937." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Wilding proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

## III. Factual Background

On May 23, 2023, Plaintiff states that he "went to [his] doctor in Wilkes-Barre, Dr. Fine and he prescribed [Plaintiff] 2mg Xanax, 30 mg Adderall and 16 mg Subutex." (Doc. 1).

On May 24, 2023, Plaintiff was "furloughed to the State Drug Treatment Program (SDTP) at the Scranton CCC Center." Id. When he arrived, he "had [his] medication on [him], which was a 30-day supply of Xanax (Alprazolam), 2mg, Adderall XR, time released capsules, 30 mg tablets and Subutex, 16 mg." Id. He claims that Officer Joseph Fabratore "logged in [his] medication," which "were handed in." Id. Plaintiff states that "in the Scranton CCC Center handbook, 11-5, it states that the inmate is the only one allowed to possess his medication and he is to have his own box with a lock." Id.

Plaintiff complains that his "medication was dispensed to [him] by C/Os who do not have a license or any training to handle or distribute schedule I narcotics" and as a result he "suffered two severe panic attacks at the Scranton CCC Center, on consecutive days, but they couldn't give [him his] Xanax because [his] medication was 'lost'." Id.

On June 16, and 17, 2023, Plaintiff states that his father "had to bring [him] to the ER at the CMC Hospital." Id.

He claims that he "notified Jeffrey James, the CEO of the Scranton CCC Center" and he told Plaintiff "to drop the issue of them losing [his] medication and [he] could go back to [his] home plan." Id. Plaintiff's mother then talked to "Alissa Owens and she told Plaintiff's mother that she couldn't find his meds." Id. He claims that Alissa Owens then "brought [him] in a fanny pack to [his] room and in the pack was [his] script of Xanax." Id.

On October 3, 2023, Plaintiff claims he was found guilty of a misconduct for "housing [his] prescription in [his] locker." Id. He "was kicked out of the State Drug Treatment Program (SDTP)" and "was written a misconduct for having medication that was given to [him] by the C/Os at the Scranton CCC Center." Id.

On November 13, 2023, Plaintiff filed the instant action in which he claims that "the C/Os and staff at both Scranton CCC Center and Scranton GEO both lost [his] medication, never counted [his] medication and improperly, without a license dispensed [his] medication." Id. He alleges that "the deliberate indifference to medical needs, unreasonable care and concern, which is a violation of the Eighth Amendment of the United States Constitution, of the Plaintiff, Shawn Wilding." Id. Plaintiff believes that he has

been "harmed both physically and mentally" by Defendants "losing Plaintiff's medication, causing him to have two severe panic attacks and having him walk to the ER." Id.

Plaintiff further believes that his "procedural due process rights under the Fourteenth Amendment were violated because [he] was terminated from the State Drug Treatment Program (SDTP)" and returned to prison. Id. Plaintiff believes this to be "an 'atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life,' in violation of the Supreme Court Case, Sandin v. Conner, 515 U.S. 472 (1995)." Id.

For relief, Plaintiff seeks compensatory and punitive damages. Id.

## IV. Discussion

### A. Eighth Amendment Medical Claim

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one

that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corn Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." <u>Id.</u> (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. <u>See</u> <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); <u>see also</u> <u>McCracken v. Jones</u>, 562 F.2d 22, 24 (10th Cir. 1977); <u>Smart v. Villar</u>, 547 F.2d 112, 113 (10th Cir. 1976).

Deliberate indifference to a serious medical need[1] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury". White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.

---

[1] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Here, Plaintiff's complaint centers on Defendants allegedly losing Plaintiff's medication, resulting in Plaintiff having two panic attacks. Assuming, without deciding, that Plaintiff's panic attacks are a serious medical need, Plaintiff's complaint is devoid of any allegations that any of the named Defendants refused or delayed needed medical treatment or purposely denied him his prescribed medication to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197. Plaintiff acknowledges that he had his medication when he arrived at Scranton CCC Center and that it was logged in by Officer Fabratore. Although not exactly clear from the facts of the complaint, Plaintiff's medication was somehow lost and he was without his anti-anxiety medicine, causing him to have a panic attack. While uncomfortable and unpleasant for Plaintiff, the Court finds that an isolated incident of lost medicine amounts to nothing more than mere negligence and is not actionable under §1983. See, e.g., Bayton v. Monroe Cty. Prison, 2013 WL 2897795 at *7-8 (M.D. Pa. June 11, 2013) (mistakenly providing pain medication that caused an adverse reaction in plaintiff amounted only to negligence that was not actionable under §1983); Richardson v. U.S., 2010 WL 2571855 (M.D. Pa. June 22, 2010) (isolated

incident of mistakenly giving plaintiff another inmate's medication was insufficient to establish constitutional violation); McCurry v. Nauroth, 1990 WL 87326 at *3 (E.D. Pa. June 13, 1990) (an isolated incident of overprescribing three extra pills of Motrin was attributable to unintentional human error and did not amount to a constitutional violation). Consequently, Plaintiff's claim against Defendants for negligence and/or malpractice only, is not cognizable in a §1983 proceeding. Id.; see also Hight v. New River Valley Regional Jail Med. Staff Dep't, 2017 WL 530571, *2 (W.D. Va. Feb. 8, 2017) (finding nurse not deliberately indifference for giving inmate wrong prescription): Mitchell v. Diamond Pharmacy Servs., 2014 WL 5393120, *2 (M.D. Pa. Oct. 23, 2014) (holding allegations that inmate received the wrong prescription medication do not rise to the level of a constitutional claim); Wilkins v. Wetzel, 2013 WL 5504491, *6 (W.D. Pa. Oct. 3, 2013) (nurse who mistakenly ordered the wrong prescription for inmate, and then forgot to order the correct prescription was not deliberately indifferent).

### B. Due Process

Plaintiff challenges the fact that he was found guilty of a misconduct and returned from the Scranton CCC Program back to prison as a result of the misconduct.

The dispositive issue here is whether Plaintiff has sufficiently alleged facts that, if proven, could establish that he had a liberty interest protected by the Fourteenth Amendment. If he did not, he cannot make out a due process claim.

The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment. Montanez v. Sec'y Dep't of Corr., 2014 WL 5155040, at *6, 773 F.3d 472, 482–83 (3d Cir. Aug. 15, 2014) (quoting Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine what process is necessary to protect it. Newman v. Beard, 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, Plaintiff must establish that he had a protected liberty interest that triggered due process rights. See Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as ordinary citizens do. See Sandin v. Conner, 515 U.S. 472, 485 (1995). Their incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal

system." Id. (quoting Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977)). Yet, prisoners do not leave all of their constitutional rights at the prison gate. See Sandin, 515 U.S. at 485; Turner v. Safley, 482 U.S. 78, 89–90 (1987).

A protected liberty interest is either inherent in the Due Process Clause or created by state law or regulations. Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir.1999) (citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)).

The Due Process Clause does not afford Plaintiff a protected liberty interest because he was not imprisoned beyond his maximum sentence. If an inmate is not confined beyond the sentence imposed and the sentence is typically administered, the Due Process Clause does not confer a liberty interest in freedom. Sandin, 515 U.S. at 480. The Due Process Clause does not guarantee a prisoner's placement in any particular prison during the term of imprisonment imposed. Meachum v. Fano, 427 U.S. 215, 224 (1976); see Fraise, 283 F.3d at 522. Nor does it protect a prisoner against a transfer from one institution to another. Meachum, 427 U.S. at 225.

An inmate's transfer from a halfway house back to prison falls "within the normal limits or range of custody which the conviction has authorized the state to impose." It does not confer a liberty interest. Meachum, 427 U.S. at

system." Id. (quoting Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977)). Yet, prisoners do not leave all of their constitutional rights at the prison gate. See Sandin, 515 U.S. at 485; Turner v. Safley, 482 U.S. 78, 89–90 (1987).

A protected liberty interest is either inherent in the Due Process Clause or created by state law or regulations. Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir.1999) (citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)).

The Due Process Clause does not afford Plaintiff a protected liberty interest because he was not imprisoned beyond his maximum sentence. If an inmate is not confined beyond the sentence imposed and the sentence is typically administered, the Due Process Clause does not confer a liberty interest in freedom. Sandin, 515 U.S. at 480. The Due Process Clause does not guarantee a prisoner's placement in any particular prison during the term of imprisonment imposed. Meachum v. Fano, 427 U.S. 215, 224 (1976); see Fraise, 283 F.3d at 522. Nor does it protect a prisoner against a transfer from one institution to another. Meachum, 427 U.S. at 225.

An inmate's transfer from a halfway house back to prison falls "within the normal limits or range of custody which the conviction has authorized the state to impose." It does not confer a liberty interest. Meachum, 427 U.S. at

225. Thus, it does not implicate due process protections under the Due Process Clause. Asquith, 186 F.3d at 410–12.

In Asquith, the Third Circuit held that a person serving his sentence in a halfway house did not have a liberty interest in remaining at the halfway house under the Due Process Clause because he never left institutional confinement. Id. at 411. See also Brennan v. Cunningham, 813 F.2d 1, 5 (1st Cir.1987) ("An inmate in a halfway house .... enjoys some significant liberty, [but] he remains under confinement in a correctional institution."). Although appellant could leave at certain times for work or to visit family, he still lived in a strictly monitored building where he was subject to curfew and other restrictions. The Third Circuit held that because he was still in confinement, Asquith's transfer to a more restrictive confinement did not trigger due process protections under the Due Process Clause. Id.

Although life in a halfway house is less restrictive than within the prison, the prisoner remains in state custody subject to restraints on his freedom. In other words, placement in a halfway house is still confinement. Transferring the inmate from a halfway house to prison is a permissible transfer from one facility to another in the prison system. Thus, placement in a halfway house does not give rise to a protected liberty interest. See Meachum, 427 U.S. at 225.

Though Plaintiff was afforded more freedom at the CCC than in prison, his tenure there still constituted institutional confinement.[2] See Asquith, 186 F.3d at 410–11; Brennan, 813 F.2d at 5. Plaintiff's transfer from the Scranton CCC back to a correctional facility did not implicate due process protection. See Meachum, 427 U.S. at 225 (holding that liberty interests are not implicated when an inmate is transferred from one institution to another with less favorable conditions). Consequently, Plaintiff is not entitled to due process protection. Thus, Plaintiff's complaint is without merit.

## V. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Here, leave to amend will be denied because amendment would be futile. Plaintiff's allegations do not implicate an Eighth Amendment deliberate

---

[2] Plaintiff does not allege that he was able to travel freely without any restriction. In fact, those housed in a CCC must have a specific reason for leaving and sign out and return at a specific time. Residents are also subject to misconduct notices and can face return to prison. John E. Wetzel, What is a Community Corrections Center? 69 The PAPPC Journal, 1, 6 (2012), at:https://www.pappc.org/docs/Feb%202012%20Journal%20FINAL2%20lo%20res.pdf.

indifference claim, or a Fourteenth Amendment due process violation. Plaintiff's allegations are legally, rather than factually, deficient, and thus amendment would be futile. Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. Conclusion

Based on the forgoing, the Court will grant Plaintiff's motion for leave to proceed *in forma pauperis* and dismiss the complaint without prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for Plaintiff's failure to articulate a cognizable §1983 claim.

A separate Order will be issued.

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Judge

Date: December 14, 2023